**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

MICHAEL D. PEARCE and

MATT BURRUS,

                              Plaintiffs,

v.

P.A.-MAX IMPORTS, LLC d/b/a

FISHERS IMPORTS,

                              Defendant.

Civil Action No. 4:26-cv-03963

**JURY TRIAL DEMANDED**

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE KENNETH M. HOYT:

Plaintiffs Michael D. Pearce and Matt Burrus (collectively "Plaintiffs") file this First Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) as a matter of right within twenty-one days of Defendant's Motion to Dismiss, and respectfully show as follows:

### PRELIMINARY STATEMENT

This First Amended Complaint is filed as a matter of right under Federal Rule of Civil Procedure 15(a)(1)(B), which provides that a party may amend its pleading once as a matter of course within twenty-one (21) days after service of a motion under Rule 12(b). Defendant filed its Motion to Dismiss on or about May 5, 2026. This Amended Complaint is filed within that twenty-one-day window and requires no leave of Court.

The filing of this First Amended Complaint renders Defendant's pending Motion to Dismiss moot as a matter of law. See Blythe v. Taber, No. 4:21-cv-1028, 2021 WL 4127823, at *1 (S.D. Tex. Sept. 9, 2021) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal effect; accordingly, a motion to dismiss directed at the original complaint is moot."). Plaintiffs respectfully submit that the Court should deny or dismiss as moot Defendant's pending motion without prejudice to Defendant's right to file a new responsive pleading directed at this Amended Complaint.

This Amended Complaint strengthens and supplements the factual allegations of the original Complaint, adds Matt Burrus as a co-plaintiff in his capacity as a co-purchaser and co-signatory to all material transaction documents, and presents the Court with a complete and detailed factual record establishing both personal jurisdiction over Defendant and Plaintiffs' entitlement to relief on each cause of action pleaded herein.

## I. PARTIES

1.     Plaintiff Michael D. Pearce is an individual residing in Harris County, Texas, at 903 Queen Annes Rd, Houston, Texas 77024. He is licensed to practice law in the State of Texas (State Bar No. 24041667) and appears here pro se on behalf of himself and as co-plaintiff with Matt Burrus.

2.     Plaintiff Matt Burrus is an individual residing in Harris County, Texas, at 903 Queen Annes Rd, Houston, Texas 77024. He is the Chief Operating Officer of the Houston Association of Realtors (HAR). He is a co-purchaser of the vehicle at issue — having signed the Bill of Sale, Indiana Title Application, Odometer Disclosure, Power of Attorney, Privacy Notice, and Huntington National Bank Loan Agreement — and is a co-plaintiff in this action.

3.     Defendant P.A.-Max Imports, LLC d/b/a Fishers Imports ("Fishers Imports" or "Defendant") is an Indiana limited liability company registered and doing business in the State of Indiana. Its principal place of business is in Indiana. It may be served through its registered agent: Peyman Rashidfarokhi, 9650 Mayflower Park Drive, Suite B, Carmel, Indiana 46032.

## II. JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity of citizenship exists between Plaintiffs, both citizens of Texas, and Defendant, a citizen of Indiana. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This action was originally filed in state court and was removed to this Court by Defendant on diversity grounds pursuant to 28 U.S.C. §§ 1441 and 1446.

6.      This Court has personal jurisdiction over Defendant because Defendant purposefully directed its activities toward Texas through a documented course of conduct, each element of which is memorialized in signed, contemporaneous records:

(a) Sales Manager Nick Miller initiated contact by sending Plaintiff Pearce an email on May 5, 2022, with the subject line: "2014 Bentley GTC V8S / Houston" — identifying the Texas destination of this transaction from the first written communication;

(b) Finance Director Brandon Conn emailed both Plaintiff Pearce and Plaintiff Burrus at matthew.burrus@har.com (the Houston Association of Realtors email address) on May 7, 2022, confirming that Conn knew throughout the transaction that both buyers were Texas-based Houston professionals;

(c) Defendant executed an Indiana ST-108NR tax form signed under penalty of perjury explicitly certifying the Vehicle would be "titled and located" in Houston, Texas;

(d) Defendant prepared and mailed a Texas title packet to Plaintiffs at their Houston address including an Indiana Power of Attorney granted by Harris County, Texas residents appointing Fishers Imports as attorney-in-fact, a cover letter addressed "Dear Michael & Matthew" directing Plaintiffs to their local Texas DMV, and Texas-specific title application instructions;

(e) The Bill of Sale identifies the buyers' county as Harris County, Texas;

(f) The credit application was printed at Fishers Imports' location on 05/07/2022 at 15:40 listing Plaintiffs' Houston, Texas address;

(g) Defendant received and retained photocopies of both Plaintiffs' Texas driver's licenses and Plaintiff Pearce's Texas USAA insurance card reflecting 903 Queen Annes Rd, Houston, TX 77024;

(h) Nick Miller sent wire transfer instructions to Plaintiff Pearce's Houston Gmail address, directing financial performance to originate from Texas;

(i) Peyman Rashidfarokhi — the very individual who signed Defendant's affidavit claiming minimal Texas contacts — personally transmitted the DocuSign completion notice to Plaintiffs in Houston;

(j) Defendant selected, engaged, and controlled the motor carrier (Carship Inc.) for transport of the Vehicle to Texas, collected the $1,500 transport fee from Plaintiffs, and Miller personally intervened to resolve delivery complications in Houston on May 23, 2022; and

(k) Title Clerk Amina Manuel (Amina@DriveFishersImports.com) separately corresponded with Plaintiff Pearce on May 27, 2022 regarding the Texas title registration packet, performing Texas-specific administrative functions for the Texas buyers.

7. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims — including the negotiation, execution, and delivery of the purchase contract and the receipt and reliance upon the fraudulent misrepresentations — occurred in this District.

### III. DISCOVERY CONTROL PLAN

8.      Plaintiffs intend to conduct discovery under the Federal Rules of Civil Procedure. Plaintiffs request a jury trial and have made a timely jury demand.

### IV. FACTUAL BACKGROUND

**A. The Transaction**

9.      On or about May 7, 2022, Plaintiffs Michael D. Pearce and Matt Burrus purchased a 2014 Bentley Continental GT V8S Convertible, VIN: SCBGH3ZA2EC096615 (the "Vehicle"), from Fishers Imports for a purchase price of $119,000.00.

10.     The transaction was initiated by Fishers Imports' Sales Manager, Nick Miller, who on May 5, 2022 — two days before closing — sent Plaintiff Pearce an email with the subject line: "2014 Bentley GTC V8S / Houston." Fishers Imports did not stumble upon a Texas buyer; it affirmatively identified and labeled this deal by its Texas destination from the first written communication.

11.     Over the course of the multi-day transaction, Fishers Imports' employees communicated directly and repeatedly with Plaintiffs in Houston:

Nick Miller (Sales Manager, nick@fishersimports.com): sent the fraudulent CARFAX as the opening sales pitch via text on May 3, 2022; managed all pre-sale negotiations; directed vehicle reconditioning; transmitted wire instructions to Plaintiff's Houston email; sent Plaintiffs a personal video walkthrough of the Vehicle on May 19, 2022; arranged Carship Inc. as the motor carrier; monitored real-time delivery and personally intervened when

delivery complications arose in Houston on May 23, 2022; and is identified as the salesperson on the Bill of Sale.

Brandon Conn (Finance Director/Business Manager, brandon.conn@fishersimports.com): managed the Huntington National Bank financing process; emailed both Plaintiffs on May 7, 2022 transmitting the Gold Standard Automotive Network warranty brochure and confirming the transaction; emailed on May 10, 2022 confirming receipt of the Houston-executed contract ("received your docs back") and confirming the wire transfer ("Wire hit lastnight just past close").

Amina Manuel (Title Clerk, Amina@DriveFishersImports.com): separately corresponded with Plaintiff Pearce regarding the Texas title packet on May 27, 2022, performing Texas-specific administrative functions.

Peyman Rashidfarokhi (registered agent and declarant in Defendant's Motion to Dismiss): personally transmitted the DocuSign completion notice to Plaintiffs in Houston — the same individual who subsequently signed an affidavit purporting to minimize Fishers Imports' Texas contacts.

12.    The Vehicle was shipped and delivered to Plaintiffs at their residence in Houston, Texas.

**B. The Misrepresentations and the Irreconcilable Warranty**

13.    At the time of sale, Nick Miller transmitted a CARFAX Vehicle History Report to Plaintiff Pearce via text message on May 3, 2022 — as the opening communication of his sales pitch. That same CARFAX, dated May 7, 2022, was presented again to Plaintiffs in hard copy at closing and signed by both Plaintiffs. The CARFAX affirmatively represented

that the Vehicle had "no accidents or damage reported" and "no structural damage reported to CARFAX — No Issues Reported" for all owners. Plaintiffs received, read, and relied upon this representation in deciding to purchase the Vehicle and in paying the agreed purchase price of $119,000.00.

14.     Fishers Imports further represented, orally and in the sales documentation, that the Vehicle was of a particular standard, quality, and condition consistent with a clean history, and that it had no prior structural damage, accidents, or undisclosed defects.

15.     Simultaneously, at closing on May 7, 2022, Fishers Imports presented Plaintiffs with an "AS IS — No Warranty" Buyers Guide purporting to disclaim all responsibility for the Vehicle's condition. This disclaimer is legally ineffective as to Plaintiffs' claims for three independent reasons: (a) under Texas law, an "as is" clause cannot disclaim liability for fraudulent misrepresentation or active concealment, *Prudential Ins. Co. v. Jefferson Assocs.*, 896 S.W.2d 156 (Tex. 1995); (b) Fishers Imports' affirmative CARFAX representation — provided both electronically before closing and in hard copy at closing, and signed by Plaintiffs — constituted an express representation of vehicle condition that superseded any "as is" disclaimer; and (c) on the same day and in the same transaction, Fishers Imports sold Plaintiffs a $5,964.00 Gold Standard Automotive Network extended service warranty, which is logically and legally irreconcilable with a simultaneous disclaimer of all responsibility for the vehicle's condition.

16.     These representations were false. Defendant knew, or was reckless in not knowing, that they were false at the time they were made.

## C. The Concealed Damage

17.     On April 12, 2022 — exactly twenty-five (25) days before Plaintiffs' purchase — the Vehicle sustained severe structural damage that was announced and documented at a Florida auto auction through Experian's AutoCheck vehicle history reporting system. This event was known to vehicle dealers, auction participants, and industry professionals who routinely consult AutoCheck in connection with vehicle transactions.

18.     The Vehicle also has a prior documented structural damage repair event dated July 11, 2017, confirming a history of structural compromise predating Plaintiffs' purchase.

19.     Fishers Imports acquired the Vehicle at or through auction and therefore had actual or constructive knowledge of the April 12, 2022 severe structural damage event at the time it offered the Vehicle for sale to Plaintiffs. The AutoCheck report reflecting this damage was available through standard industry tools that any professional used car dealer routinely consults when acquiring and reselling vehicles.

20.     Despite this knowledge, Fishers Imports affirmatively represented to Plaintiffs via the CARFAX report that the Vehicle had "no accidents or damage reported," and failed to disclose the April 12, 2022 severe structural damage event. The CARFAX provided by Defendant was either deliberately selected because it omitted the AutoCheck-reported damage, or was provided with reckless disregard for its material incompleteness.

## D. The Sophisticated Concealment

21.     Prior to completing the purchase, Plaintiffs exercised reasonable diligence. At their own expense, Plaintiffs retained and paid for an independent pre-purchase inspection of the Vehicle by a qualified third-party inspector.

22.    The inspector found no evidence of prior structural damage. This result — a clean inspection report on a vehicle that had in fact sustained severe structural damage just twenty-five days earlier — is not evidence that the damage did not exist. To the contrary, it is affirmative evidence that the damage had been skillfully and deliberately concealed through professional cosmetic and structural reconditioning designed to withstand a standard inspection.

23.    Fishers Imports' own communications confirm that it was actively engaged in reconditioning and cosmetic repairs of the Vehicle in advance of the sale. Nick Miller's email of May 5, 2022 confirmed that cosmetic work was ongoing and being managed by Fishers Imports' detail shop. This reconditioning was designed to present the Vehicle as undamaged.

24.    The combination of: (a) severe structural damage occurring 25 days before sale; (b) the damage being reported in AutoCheck but omitted from the CARFAX provided at sale; (c) active reconditioning of the Vehicle in the days before purchase; and (d) the clean independent inspection result despite the confirmed structural damage — establishes a pattern of sophisticated concealment, not mere non-disclosure.

**E. The Worthless Warranty — An Independent Deceptive Act**

25.    On May 7, 2022 — the same day Fishers Imports presented Plaintiffs with the "AS IS — No Warranty" Buyers Guide — Brandon Conn emailed Plaintiffs the Gold Standard Automotive Network extended service agreement and collected $5,964.00 for a warranty purporting to cover mechanical repairs for five (5) years or 60,000 miles with a $100

deductible. Plaintiffs paid this amount as part of the overall transaction, relying on Fishers Imports' representation that the warranty would provide meaningful coverage.

26.    When Plaintiffs subsequently presented the Vehicle for repair at Bentley Houston, the authorized Bentley dealership at 1530 W. Loop South, Houston, Texas, the Gold Standard Warranty paid $0.00 toward the cost of repairs across multiple service visits. The warranty Fishers Imports sold for $5,964.00 provided no meaningful coverage and was worthless in practice.

27.    Fishers Imports' simultaneous presentation of an "AS IS" disclaimer and collection of $5,964.00 for a warranty constitutes an independent deceptive act: Fishers Imports represented that a service — the warranty — had characteristics and quality it did not have, in violation of Tex. Bus. & Com. Code § 17.46(b)(5) and (b)(7). This conduct is also probative of the knowing and intentional nature of Fishers Imports' overall scheme.

**F. Discovery of the Fraud and Resulting Damages**

28.    After the purchase, Plaintiffs sought to trade in the Vehicle. On September 13, 2024, during the trade-in process, the acquiring dealership informed Plaintiffs, through its own vehicle history check, that the Vehicle had a prior structural damage history that had not been disclosed at the time of Plaintiffs' purchase. This was the first time Plaintiffs had any knowledge that the Vehicle had sustained structural damage prior to their purchase.

29.    Following the dealership's disclosure on September 13, 2024, Plaintiffs obtained an Experian AutoCheck vehicle history report, which confirmed the April 12, 2022 severe structural damage event — an event that Defendant's CARFAX had not disclosed. Prior to

September 13, 2024, Plaintiffs had no knowledge of this damage and could not, through ordinary diligence, have discovered it, given Defendant's active concealment.

30.    As a result of the undisclosed structural damage, the Vehicle's market value was materially diminished. Plaintiffs were unable to obtain fair market value for the Vehicle and were compelled to accept a substantial loss upon trade-in.

31.    During Plaintiffs' ownership, the Vehicle required repeated and substantial repairs at Bentley Houston, the authorized Bentley dealership at 1530 W. Loop South, Houston, Texas. The Gold Standard Warranty — sold by Fishers Imports for $5,964.00 — paid $0.00 toward any of these repair costs, resulting in significant out-of-pocket expenses attributable to the Vehicle's undisclosed structural condition and the worthless warranty.

32.    During Plaintiffs' ownership, the Vehicle exhibited recurring mechanical and electrical failures consistent with, and likely caused or exacerbated by, the concealed prior structural damage. These included: (a) failure of the convertible top alignment on the driver's side — a defect that Fishers Imports' own Sales Manager Nick Miller acknowledged in his May 5, 2022 email, stating the top was "not closing correctly" and needed to be "lubricated/adjusted" — which subsequently caused the driver's side window to fail and shatter during ownership, requiring full replacement at Plaintiffs' expense; and (b) extensive damage to the Vehicle's wiring harness, which Plaintiffs initially attributed to rodent intrusion but which is consistent with structural compromise to the Vehicle's undercarriage or body cavity resulting from the prior severe structural damage. The wiring harness required replacement on two separate occasions at significant out-of-pocket cost to Plaintiffs. None of these repair costs were covered by the Gold Standard Warranty. Had Defendant disclosed the Vehicle's true damage history at the time of sale, Plaintiffs — who

made clear throughout the negotiation that they would only purchase an accident-free vehicle — would not have purchased the Vehicle and would not have borne any of these ownership costs.

33.    Plaintiffs suffered actual economic damages as a result of the undisclosed structural damage, including: (a) overpayment at purchase and loss on trade-in of not less than $83,000.00, reflecting the difference between the $119,000.00 purchase price paid by Plaintiffs and the $36,000.00 trade-in value offered by the acquiring dealership — a reduction driven directly by the Vehicle's concealed structural damage history; (b) the $5,964.00 paid for the Gold Standard Warranty, which provided no meaningful coverage; and (c) additional out-of-pocket repair costs for the convertible top window failure and wiring harness replacements, in amounts to be established at trial — totaling actual damages of not less than $88,964.00, exclusive of statutory multipliers and exemplary damages.

34.    Plaintiffs did not discover, and in the exercise of reasonable diligence could not have discovered, the existence or extent of the prior structural damage until September 13, 2024, due to Defendant's active concealment.

## V. CAUSES OF ACTION

**Count One: Violations of the Texas Deceptive Trade Practices Act (DTPA)**

*Tex. Bus. & Com. Code §§ 17.41–17.63*

35.    The foregoing factual allegations are incorporated herein by reference.

36.    Plaintiffs are "consumers" as defined by Tex. Bus. & Com. Code § 17.45(4), having sought and acquired goods — the Vehicle — by purchase for personal use and enjoyment.

37.    Defendant committed false, misleading, and deceptive acts or practices in violation of the DTPA, including:

• Representing that the Vehicle had characteristics, uses, or qualities that it did not have, specifically that it had no prior accidents or structural damage, in violation of § 17.46(b)(5);

• Representing that the Vehicle was of a particular standard, quality, or grade when it was not, in violation of § 17.46(b)(7);

• Representing that the Gold Standard Warranty had characteristics, quality, and coverage that it did not have, in violation of § 17.46(b)(5) and (b)(7);

• Advertising the Vehicle with intent not to sell it as advertised, in violation of § 17.46(b)(9);

• Failing to disclose known material information — specifically the April 12, 2022 severe structural damage event — with the intent to induce Plaintiffs into a transaction they would not have entered had the information been disclosed, in violation of § 17.46(b)(24).

38.    Defendant's conduct was a producing cause of Plaintiffs' actual damages.

39.    Defendant's conduct was committed "knowingly" within the meaning of Tex. Bus. & Com. Code § 17.45(9) and/or "intentionally" within the meaning of § 17.45(13), entitling Plaintiffs to additional damages of up to three times their economic damages pursuant to § 17.50(b)(1).

40.    Plaintiffs are entitled to recover economic damages, additional damages, and reasonable attorneys' fees and costs under the DTPA.

**Count Two: Common Law Fraud and Fraudulent Misrepresentation**

41.    The foregoing factual allegations are incorporated herein by reference.

42.    Defendant made material misrepresentations to Plaintiffs regarding the condition and history of the Vehicle, specifically representing through the CARFAX report and sales communications that the Vehicle had no prior accidents, no structural damage, and was of the quality and condition represented.

43.    These representations were false.

44.    Defendant knew the representations were false, or made them recklessly without knowledge of their truth.

45.    Defendant made these representations with the intent that Plaintiffs would rely upon them in making their purchase decision.

46.    Plaintiffs did rely upon Defendant's representations, and such reliance was reasonable. Plaintiffs paid $119,000 for the Vehicle and would not have done so, or would not have paid that price, had the true damage history been disclosed.

47.    Plaintiffs suffered actual damages as a direct and proximate result of their reliance on Defendant's fraudulent misrepresentations.

48.     Because Defendant's fraud was intentional and involved a conscious disregard for the rights of Plaintiffs, Plaintiffs are entitled to exemplary damages in an amount to be determined by the jury.

**Count Three: Fraudulent Concealment**

49.     The foregoing factual allegations are incorporated herein by reference.

50.     Defendant had a duty to disclose the April 12, 2022 severe structural damage event because: (a) the damage was material to the transaction; (b) Defendant had superior knowledge of the damage history through its participation in and access to the auction system in which the damage was recorded; and (c) Defendant knew that Plaintiffs did not have access to, and had not been provided, the Experian AutoCheck report that reflected the damage.

51.     Defendant concealed the April 12, 2022 structural damage event by (a) providing a CARFAX report that omitted the damage, (b) conducting reconditioning and cosmetic repairs designed to conceal the physical evidence of the damage, and (c) representing that the Vehicle had no accidents or damage.

52.     Defendant's concealment was intentional and was designed to induce Plaintiffs into completing the purchase.

53.     Plaintiffs relied on Defendant's concealment to their detriment and suffered actual damages as a result.

**Count Four: Negligent Misrepresentation (Alternative)**

54.    Pleaded in the alternative, the foregoing factual allegations are incorporated herein by reference.

55.    In the course of its business, Defendant provided false information to Plaintiffs for the guidance of their business transaction, specifically the representation that the Vehicle had no prior accidents or structural damage.

56.    Defendant failed to exercise reasonable care or competence in obtaining or communicating this information, including by failing to consult or disclose available Experian AutoCheck data reflecting the severe structural damage event.

57.    Plaintiffs justifiably relied on the information in deciding to purchase the Vehicle.

58.    Plaintiffs suffered pecuniary loss as a direct result of their reliance on Defendant's negligent misrepresentation.

**Count Five: Breach of Contract and Breach of Implied Warranties**

59.    The foregoing factual allegations are incorporated herein by reference.

60.    A valid and enforceable contract for the sale of the Vehicle existed between Plaintiffs and Defendant. As part of the basis of the bargain, Defendant represented that the Vehicle had no prior accidents or damage and was of the quality and condition consistent with those representations.

61.    Defendant breached the contract by delivering a vehicle that did not conform to these representations.

62.     Defendant breached the implied warranty of merchantability, as the Vehicle was not of the quality or condition generally expected for a vehicle represented as having no prior damage, particularly in the context of a high-end luxury automobile sold for $119,000.

63.     Defendant breached the implied warranty of fitness for a particular purpose, as Plaintiffs relied on Defendant's representations in purchasing a vehicle suitable for resale and long-term valuation consistent with a clean history.

64.     Plaintiffs suffered actual damages as a direct result of Defendant's breaches.

**Count Six: Unjust Enrichment (Pleaded in the Alternative)**

65.     The foregoing factual allegations are incorporated herein by reference. This Count is pleaded in the alternative to Plaintiffs' contract-based claims. To the extent any court finds that no enforceable contract governs the parties' dispute, or that any contractual provision bars recovery on Plaintiffs' contract claims, Plaintiffs assert this claim for unjust enrichment.

66.     Defendant received $119,000.00 from Plaintiffs in exchange for a vehicle Defendant represented as having no prior accidents or structural damage, and collected an additional $5,964.00 for a warranty that proved worthless. In fact, the Vehicle had sustained severe structural damage twenty-five days before the sale — damage Defendant knew of and actively concealed. Defendant thus received the full purchase price for a materially different and less valuable asset than the one it represented, and collected warranty proceeds for coverage it knew or should have known would be illusory.

67.    It would be inequitable and unjust for Defendant to retain the benefit of the full purchase price and warranty proceeds paid by Plaintiffs under these circumstances. Plaintiffs are entitled to restitution in an amount sufficient to restore them to the position they would have occupied had the fraud not occurred.

## VI. LIMITATIONS AND TOLLING

68.    Plaintiffs plead the discovery rule. The true nature, extent, and timing of the Vehicle's prior structural damage was not disclosed at the time of sale and was not reasonably discoverable through ordinary diligence, given Defendant's affirmative misrepresentation that no such damage existed and its active concealment of the physical evidence of that damage through professional reconditioning.

69.    Plaintiffs did not discover, and could not reasonably have discovered, the existence or extent of the prior structural damage until September 13, 2024, when the acquiring dealership first disclosed the Vehicle's damage history during the trade-in process.

70.    Additionally, Defendant's conduct constitutes fraudulent concealment, which independently tolls the running of any applicable limitations period until such time as Plaintiffs discovered or reasonably could have discovered the wrongful conduct.

## VII. DAMAGES

71.    As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered and seek the following damages:

- Economic damages, including diminution in value, overpayment at purchase, and loss on trade-in of not less than $83,000.00, with additional out-of-pocket repair costs to be established at trial, for total actual damages of not less than $88,964.00;

- The $5,964.00 paid for the Gold Standard Warranty as an independent element of actual damages;

- Out-of-pocket repair costs at Bentley Houston and other facilities that the Gold Standard Warranty failed to cover;

- Additional out-of-pocket costs and expenses incurred in connection with the trade-in transaction;

- Additional statutory damages under the Texas DTPA in an amount up to three times economic damages;

- Exemplary damages for intentional fraud;

- Reasonable attorneys' fees and costs;

- Pre-judgment and post-judgment interest at the maximum rate allowed by law;

- All other relief, legal or equitable, to which Plaintiffs are justly entitled.

72.     Pursuant to Federal Rule of Civil Procedure 8(a)(3) and applicable Fifth Circuit practice, Plaintiffs seek monetary relief in excess of $75,000. The total relief sought, inclusive of actual damages, statutory multipliers, and exemplary damages, is in the range of $100,000 to $350,000, with the exact amount to be determined by the trier of fact.

## VIII. CONDITIONS PRECEDENT

73.    All conditions precedent to Plaintiffs' claims have been performed or have occurred.

## IX. JURY DEMAND

74.    Plaintiffs demand trial by jury on all issues so triable.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Michael D. Pearce and Matt Burrus respectfully pray that:

- Defendant be cited to appear and answer herein;

- Plaintiffs recover their economic damages, including diminution in value, overpayment at purchase, loss on trade-in, and all other actual damages;

- Plaintiffs recover the $5,964.00 paid for the Gold Standard Warranty as an independent element of actual damages;

- Plaintiffs recover additional statutory damages under the Texas DTPA;

- Plaintiffs recover exemplary damages for intentional fraud;

- Plaintiffs recover their reasonable attorneys' fees and costs of court;

- Plaintiffs recover pre-judgment and post-judgment interest at the maximum rate allowed by law;

- Plaintiffs recover all other relief, in law or in equity, to which they may be justly entitled.

Respectfully submitted,


/s/ Michael D. Pearce

**Michael D. Pearce**

903 Queen Annes Rd

Houston, Texas 77024

mdpearce86@gmail.com

State Bar No. 24041667

Plaintiff, Pro Se


/s/ Matt Burrus

**Matt Burrus**

Chief Operating Officer

Houston Association of Realtors

903 Queen Annes Rd

Houston, Texas 77024

Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, a true and correct copy of the foregoing Plaintiffs' First

Amended Complaint was served upon counsel for Defendant via the Court's CM/ECF electronic

filing system, which will transmit notice to all counsel of record, including:

Andrew Sharenson

Johnson DeLuca Kurisky & Gould, P.C.

1221 Lamar St, Ste 1000, Houston, TX 77010

Counsel for Defendant P.A.-Max Imports, LLC d/b/a Fishers Imports

/s/ Michael D. Pearce

**Michael D. Pearce**